## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BETTY JEAN COLE, *et al.*,         )
                                   )
           Plaintiffs,         )
                                   )
vs.                            )      Case No.03-CV-327-GKF-PJC
                                   )
ASARCO INCORPORATED, *et al.*,   )
                                   )
         Defendants.       )

## OPINION AND ORDER

This matter comes before the court on defendants' Motion to Dismiss Plaintiffs' Third

Amended Complaint. [Doc. No. 300].  For the reasons set forth below, defendants' motion is

granted in part and denied in part.

### I.  Background/Procedural Status

Plaintiffs filed a putative class action complaint in this case on May 14, 2003, seeking

medical monitoring, compensatory and punitive damages for the diminution in value of their

properties, and injunctive relief in the form of a court-supervised relocation program, as a result

of alleged contamination caused by defendants' historic mining operations. [Doc. No. 1].

On July 15, 2005, plaintiffs filed a Second Amended Complaint [Dkt. # 219].  Plaintiffs sought

certification of a "Medical Monitoring Class" of "[a]ll individuals who, since [two years prior to

filing date of initial suit], have resided on, or are presently residing on, property located in the

Class Area for more than one year; who have been exposed to Defendants' toxic materials; and

who, as a result, face the onset of exposure related illness, including, but not limited to, renal

disease, and other cognitive, behavioral, cardiovascular, reproductive, and neurological

disorders," and a "Property Owner Class" of "[a]ll individuals and entities who owned or had an

interest in real property in the Class Area as of [date of initial filing of action]." [Dkt. # 219, ¶¶53, 55; *see* First Amended Complaint, Doc. No. 1, ¶¶52, 53].[1] On April 2, 2009, this court denied plaintiffs' Motion for Class Certification. [Doc. No. 290]. *See* 2009 U.S. Dist. LEXIS 28177 (N.D. Okla. Apr. 2, 2009).

At a status hearing held May 12, 2009, the court granted plaintiffs' request to file another amended complaint in this matter. [*See* Doc. No. 292].  Plaintiffs filed their Third Amended Complaint on June 1, 2009. [Doc. No. 296].

## II.  Allegations of the Third Amended Complaint

The Third Amended Complaint is brought on behalf of nearly 600 residential, commercial and governmental property owners in Picher and Cardin, Oklahoma, and surrounding areas within the Tar Creek Area, for compensatory and punitive damages for diminution in property values caused by defendants' alleged contamination of the area. [Doc. No. 296, ¶1].  Plaintiffs allege, *inter alia*:

- For more than a century, mining companies extracted lead worth billions of dollars from Picher-Cardin and the surrounding area, with deliberate indifference to public health. [*Id., ¶*2].

- The Defendant mining companies were a major source of the contamination deposited in the area.  The Defendants traded public health for profit by intentionally, knowingly and systematically exposing individuals to dangerous levels of lead and other heavy metals and hazardous substances. [*Id.,* ¶3].

---

[1]Plaintiffs in *Evans*, *et al., v. Asarco Incorporated, et al.*, Case No. 04-CV-094-GKF-PJC, bring similar claims but focus on damages caused by historic mining operations in Quapaw, Oklahoma. Some of the same plaintiffs and counsel are involved in both cases. In *Evans*, upon plaintiffs' motion and in the interest of judicial economy, the case was stayed pending resolution of the class certification motion in the instant case. After the court denied class certification, plaintiffs in *Evans* filed a First Amended Complaint, and defendants in that case filed a Motion to Dismiss. The First Amended Complaint, Motion to Dismiss, and related briefing in *Evans* are almost identical to the Third Amended Complaint, Motion to Dismiss, and related briefing in the instant case.

- As a result of Defendants' actions, on a daily basis residents recreated, attended school and played on school playgrounds, and resided in homes that were suffused with lead and other hazardous contaminants.  Adults in the Tar Creek area suffered dangerous exposure to these same toxic substances while they were children and, like the children of today, the adults are also exposed to these poisons on a daily basis.  Because of Defendants' actions and omissions, children and adults are at significant risk of disease.  In the wake of their mining activities and corporate practices, Defendants left behind an environmental tragedy. [*Id.,* ¶5].

- The area is situated within the Tar Creek Superfund Site, located in the northeastern portion of Ottawa County, Oklahoma ("Ottawa County"). The Site is a former lead and zinc mining area and is currently ranked in the U.S. Environmental Protection Agency ("E.P.A.") National Priorities List for Uncontrolled Hazardous Waste Sites.  The Site first came to the E.P.A.'s attention in 1984 because of acid water discharges from Defendants' abandoned mining operations.  In 1994, E.P.A. identified the potential threat to human health posed by the huge mining company wastes deposited by the Defendant mining companies. [*Id.,* ¶6].

- Approximately 50 million tons of lead wastes (*i.e.* mining tailings) left over from Defendants' mining operations are present at the Tar Creek Superfund Site.  These mine tailings, often referred to as "chat", were deposited in hundreds of piles and ponds at the site and contain high concentrations of lead and other heavy metals.  Some of the tailing piles approach 200 feet in height and are located in the center of Picher-Cardin. [*Id.,* ¶7].

- The tragedy does not stop with the health risks presented by Defendants' activities.  The extent of contamination is so vast that, even where E.P.A. has attempted remedial action, toxins are still contaminating the properties. Where no cleanup has occurred, toxic waste can be found on property belonging to Plaintiffs.  As a result, the value of their properties has been diminished to the point where their properties have practically no value. [*Id.,* ¶9].

The Third Amended Complaint alleges defendants conducted mining and milling operations in the Tar Creek Area as follows:  defendant Blue Tee Corp, formerly known as American Zinc, Leading and Smelting Company, from 1925 through 1952 [*Id.,* ¶12]; Gold Fields Mining, LLC, formerly known as Tri-State Zinc., Inc., from 1927 through 1930 [*Id.,* ¶13];   Doe Run Resources Corporation, formerly known as the Kansas Exploration Company, from 1927

through 1949 [*Id.,* ¶14].

Plaintiffs allege mining of lead and zinc in Ottawa County began in the early 1900's and continued until the 1970's. [*Id.,* ¶17].  They contend that, as a result of almost a century of extensive mining in Ottawa County, heavy metals and other hazardous substances, including lead, are present in hazardous concentrations throughout the county. [*Id.,* ¶16].  The milling of ore at the Picher Mining Field produced large quantities of tailings, which were typically disposed of next to the mill that produced them. [*Id.,* ¶19].  The coarsest tailings, chat, along with the intermingled sand-sized tailings were typically disposed of in a pile on the site by means of an elevator or a belt conveyor. [*Id.*] These chat piles were a waste product of the gravity concentration process used by mining companies. [*Id.*]  Another process involved flotation-produced finer tailings that were typically pumped into a "tailing pond." [*Id.*].  Such a pond would evaporate, leaving sediment consisting of these tailings.  [*Id.*]  The chat piles had commercial uses and were often sold as railroad ballast, concrete, aggregate, and fill for roads. [*Id.,* ¶20].  In 1986, the Oklahoma Geological Survey estimated that approximately 70 million tons of course tailings remained at the Tar Creek site. [*Id.,* ¶21].

The Third Amended Complaint cites a study by the Harvard School of Public Health and the Department of Geosciences at Wellesley College which states, *inter alia,* "[a]ctive and abandoned metal mining sites are major sources of metal contamination throughout the world," and "[d]iscarded metal-enriched solids are often stored in large piles that act as persistent toxic metal sources to surrounding ecosystems and residential areas through wind-borne dispersal of fine particles and waterborne transport of dissolved and particulate metals." [*Id.,* ¶32]. According to the Third Amended Complaint, the study also stated, "[a]s part of ongoing remediation efforts at mining-impacted sites like Tar Creek, accurate geochemical

4

characterizations of mine waste will be critical for predicting environmental fate and transport of metals and for understanding and minimizing important human and ecological exposure pathways." [*Id.,* ¶33].

The Third Amended Complaint states that the U.S. Department of Housing and Urban Development and the E.P.A. noted in a March 1996 regulation:

> Lead affects virtually every system of the body.  While it is harmful to individuals of all ages, lead exposure can be *especially damaging to children, fetuses, and women of childbearing age...*

[*Id.,* ¶23] (emphasis in Third Amended Complaint).  The Third Amended Complaint also cites a 1991 U.S. Centers for Disease Control and Prevention determination discussing the adverse health effects of lead exposure in children. [*Id.,* ¶29], as well as  a 1996 EPA report finding that children are particularly at risk from environmental hazards because their systems are still developing, they eat proportionately more food, drink more fluids and breathe more air per pound of body weight and are outside more than adult and because they are least able to protect themselves. [*Id.,* ¶30].

The Third Amended Complaint asserts defendants' past, present and/or continuing acts or omissions constitute a private nuisance in that defendants used, have used or continue to use their property in a manner that:

- has resulted in an unreasonable burden on the property interests of Plaintiffs in the form of personal harm, inconvenience, annoyance, and discomfort incidental to their possessory interest in their properties.

- has unreasonably interfered with Plaintiffs' use and enjoyment of their property.

- has unreasonably interfered with Plaintiffs' property interest by diminishing the value of their properties.

[*Id.,* ¶¶44-46].

5

The Third Amended Complaint also asserts defendants' acts or omissions have injured or endangered plaintiffs' comfort, repose, health or safety; and/or rendered plaintiffs insecure in their lives or in the use of their property, in violation of 50 Okl.St.Ann. §1.1 *et seq.* [*Id.,* ¶¶51-52].

With respect to both the common law nuisance and statutory nuisance claims, the Third Amended Complaint asserts "[t]he nuisance defendants created is a continuing nuisance in that it has continued and remains unabated."  [*Id.,* ¶¶49, 54].

Plaintiffs seek compensatory damages for diminution or loss of value of their property and punitive damages for defendants' alleged conscious, intentional, willful or reckless disregard of their rights. [*Id.,* Prayer for Relief, ¶1].

## II. Analysis

The court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).  In making this determination, the court considers "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 1974 (2007)).   A claim is subject to dismissal under Rule 12(b)(6) if the factual allegations in the complaint, taken as true, show that the plaintiff is not entitled to relief.  *Jones v. Bock,* 549 U.S. 199, 215 (2007).

### A.  Private Nuisance Claim Statute of Limitations

Where the factual allegations establish that the requested relief is barred by the applicable statute of limitations, the claim should be dismissed.  *See Ballen v. Prudential Bache Securities., Inc.,* 23 F.3d 335, 336 (10th Cir. 1994); *Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*

699 F.Supp. 251, 256 (N.D. Okla. 1988).

Nuisance claims in Oklahoma are subject to the two-year statute of limitations found in 12 O.S. §95(A)(3). *Moneypenney v. Dawson,* 141 P.3d 549, 552  n. 3 (Okla. 2006).  Ordinarily, the statute of limitations for the filing of a nuisance action begins when the injury is complete. *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1028 (10th Cir. 2007) (citing *Haenchen v. Sand Prods. Co., Inc.,* 626 P.2d 332, 334 (Okla.Civ.App. 1981)).

However, the Third Amended Complaint alleges, "[t]he nuisance that Defendants created is a continuing nuisance in that it has continued and remains unabated." [Dkt. # 296, ¶¶ 49, 54]. Plaintiffs' claims raises the question of when the statute of limitations begins to run for a continuing, abatable or temporary nuisance.[2]   For guidance the court looks to the Tenth Circuit's opinion in *Burlington Northern*.[3]   In that case, Burlington Northern and Santa Fe Railway Company ("BNSF") and Grant owned adjoining properties that were once the location of an oil refinery which operated from 1917 to 1932.  505 F.3d at 1018.  A tar-like material ("TLM") was

_____

[2]In their Response to the Motion to Dismiss, plaintiffs argue, "[i]f the nuisance in this action is ultimately proven to be not abatable, *i.e.,* is permanent, then the statute of limitations begins to run at such time as it becomes obvious and apparent that the land in question has been permanently damaged."  [Doc. No. 306, p. 8].  This issue, they assert, would be a fact question for the jury. [*Id.*]  However, this motion must be decided by looking at the complaint itself and determining whether, on its face, the claim is time barred. As noted above, plaintiffs allege a continuing nuisance, not a permanent nuisance. In an action for continuing nuisance, the statute of limitations is calculated as the two years next preceding the filing of the action rather than the time the nuisance was created. *Haenchen,* 626 P.2d at 334. In such a case, "[plaintiff] will not be barred in bringing his action but must limit proof of damages to the two years next preceding the filing thereof." *Id.* The Third Amended Complaint's characterization of these claims as ones for continuing nuisances thus render plaintiffs' speculation about whether the nuisance might be proven permanent, as well as potential application of the "discovery rule" inapposite.

[3]The Tenth Circuit's interpretation of Oklahoma law in the *Burlington Northern* case is binding on all district courts in the circuit.  *See Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 866 (10th Cir. 2003).  Plaintiffs cite no Oklahoma state court decisions rendered after the Tenth Circuit's decision in *Burlington Northern.*  Thus, to the extent plaintiffs rely on earlier Oklahoma decisions that are inconsistent with *Burlington Northern,* those cases are not precedential in this circuit.  *Wankier,* 353 F.3d at 866.

a waste by-product of the refinery's operation.  BNSF's property was located immediately east

and downhill from Grant's property.  BNSF alleged that in the early 1970s, Grant personally

directed, or had reason to know of, substantial earth moving and construction on his property

which BNSF contended precipitated the migration of TLM onto its property.  BNSF alleged the

migration of TLM had continued over a period of decades as a result of repeated heat expansion

occurring each summer.  BNSF removed the TLM and disposed of it off-site in July 2001, and

also constructed a berm on the property line to stop the continued migration of TLM onto its

property.  BNSF then sued Grant, asserting, *inter alia,* a private nuisance claim and seeking

damages for unjust enrichment as a result of BNSF's cleanup activities.  At the close of evidence

in the trial, the district court entered judgment as a matter of law for Grant on the private

nuisance claim based, in part, on its determination that BNSF failed to identify what costs it had

expended within the applicable statute of limitations.  The Tenth Circuit, applying Oklahoma

law, concluded damages recoverable for a continuing temporary nuisance such as that alleged by

BNSF are limited to  injuries occurring within a two-year period immediately preceding the

filing of the lawsuit.[4]  The court reasoned:

> The statute of limitations for the filing of a nuisance action begins when the
> injury is complete.   For a continuing temporary nuisance, such as the nuisance
> alleged by BNSF, the injury is complete upon each alleged invasion, which
> gives rise over and over to [new] causes of action for damages sustained
> within the limitations period immediately prior to suit.  Injuries which occur
> outside the two-year look-back period are outside the statute of limitations.

*Id.* at 1028-29 (quotations and citations omitted).

Here, the Third Amended Complaint alleges a continuing nuisance, and refers to at least

_____

[4]The court cited *Branch v. Mobil Oil Corp.,* 788 F.Supp. 531, 536 (W.D. Okla. 1991); *City of Bethany v. Municipal Securities Co.,* 274 P.2d 363, 367 (Okla. 1954); *Haenchen,* 626 P.2d at 334.

8

one study that discusses air and water dispersal of toxic wastes from the chat piles and deposits. Taking as true the allegations of the complaint, and applying the holding in *Burlington Northern,* it is conceivable plaintiffs could present evidence of damages that occurred from airborne or waterborne migrations or invasions of toxins occurring within the two-year period prior to the filing of the original complaint on May 14, 2003.[5]  Any damages from migrations or invasions occurring before that period, however, are time-barred.  Therefore, defendants' Motion to Dismiss must be granted with respect to any injuries from migrations or invasions which occurred outside the two-year look-back period and denied with respect to injuries from migrations or invasions occurring within the two-year look-back period.

### B.  Statutory Nuisance Claim[6]

The Third Amended Complaint purports to assert a statutory nuisance claim pursuant to 50 O.S. §1.1 *et seq.* [Doc. No. 296, ¶¶50-54].[7]  Plaintiffs contend in their response to defendants' Motion to Dismiss that their statutory claim is one for "public nuisance"[8] and, citing 50 O.S. §7, they assert there is no statute of limitations on public nuisance claims.  Under 50 O.S. §7, "No

---

[5]At this stage, the court does not pass judgment on the issue of whether such invasions or migrations have occurred within the two-year period.

[6]In their Response to Defendants' Motion to Dismiss, plaintiffs stated their intention to file a Motion to Sever this claim on behalf of the Cities of Picher and Cardin [Doc. No. 306, p. 9 n. 2]. Subsequently plaintiffs *did* file a Motion to Sever [Doc. No. 313].  The court does not herein rule on the Motion to Sever.  However, as discussed in §II.C. of this order, the Third Amended Complaint fails to allege facts establishing the standing of "E A Freeman" to sue on behalf of the City/Town of Picher, Oklahoma, and "Herman C McMullan," Mayor, to sue on behalf of the City/Town Of Cardin.

[7]This statutory citation appears to be erroneous, as 50 O.S. §1.1 addresses agricultural activities as nuisances.

[8]A "public nuisance" is defined as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."  50 O.S. §2.

lapse of time can legalize a public nuisance amounting to an actual obstruction of public right."

As a preliminary matter, the court observes that the Third Amended Complaint does not allege

any "actual obstruction of a public right."  Morever, the Oklahoma Supreme Court has held that

while 50 O.S. §7 applies to *abatement* claims, it "does not suspend the operation of the statute of

limitations on a claim for damages caused by a public nuisance which obstructs a public right for

as long as the nuisance exists."  *Branch v. Mobil Oil Corporation,* 788 F.Supp. 531, 536 (Okla.

1991).  Plaintiffs in this case have sought monetary damages but *not* abatement.  Thus, the two-

year statute of limitations applicable to private nuisance claims is also applicable to claims for

damages for statutory nuisance.  *Id.*  As a result, dismissal of claims for injuries arising before

the two-year look-back period is appropriate on the statutory nuisance claim.

### C.  Standing

The Third Amended Complaint states that individual plaintiffs and their properties are

identified in a chart attached as Exhibit A. [Doc. No. 296, ¶11].  Exhibit A, in turn, lists named

plaintiffs and the street addresses of their property. [Doc. No. 296-2, Ex. A]. Defendants assert

the Third Amended Complaint fails to allege facts establishing that certain of the plaintiffs have

standing to assert claims.

The United States Supreme Court has framed the standing issue as follows:

> In essence the question of standing is whether the litigant is entitled to have the
> court decide the merits of the dispute or of particular issues.  This inquiry involves
> both constitutional limitations on federal-court jurisdiction and prudential
> limitations on its exercise....

*Warth v. Seldin,* 422 U.S. 490, 498 (1975).  A plaintiff must allege specific, concrete facts

demonstrating that the challenged practices harm him and that he personally would benefit in a

tangible way from the court's intervention.  *Id.* at 580.  In examining a challenge to standing, the

10

court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *Id.* at 502. However, if the allegations of the complaint are deficient with respect to standing, the court may allow or require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. *Id.* "If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Id.*

Federal Rule of Civil Procedure 17 governs both the determination of a party's capacity to sue and be sued and his or her status as the real party in interest. *Esposito v. United States,* 368 F.3d 1271, 1273 (10th Cir. 2004). The "real party in interest" principle requires that an action "be brought in the name of the party who possesses the substantive right being asserted under the applicable law." *Id.* Capacity, by contrast, refers to "a party's personal right to litigate in a federal court." *Id.* Under Fed.R.Civ.P. 17(b), issues of capacity are to be determined by the law of the individual's domicile–in this case, Oklahoma. In Oklahoma, the "real party in interest" is the party legally entitled to a claim's proceeds. *Aetna Casualty & Surety Co. v. Associates Transports, Inc.,* 512 P.2d 137, 140 (Okla. 1973). The purpose of the real party in interest requirement from the defendant's perspective is to insure that the defendant will not later be subjected to a second suit based on the same cause or claim. *Boston Ave. Management, Inc. v. Associated Resources, Inc.,* 152 P.3d 880, 887 (Okla. 2007).

Exhibit A of the Third Amended Complaint lists numerous plaintiffs who purport to sue on behalf of businesses, religious groups, governmental entities or other individuals. The exhibit does not set forth any factual allegations establishing their standing or capacity to do so. Defendants have identified the following categories of plaintiffs whose standing to sue is not supported by any factual allegations:

11

**1. Individuals asserting claims for injuries to properties owned by business entities**

A number of individuals purport to bring claims for injuries to properties owned by businesses.  It is unclear from the face of Exhibit A whether and/or in what capacity those individuals have standing to sue on behalf of the businesses.  To the extent the businesses are corporations, then pursuant to 18 O.S. §1016(2), the corporations must sue in their corporate name.  *See Mainord v. Sharp,* 569 P.2d 546, 547-58 (Okla. Civ. App. 1977) (corporation, and not individual sole owner of corporation, was real party in interest in action to recover on a debt owed to corporation); *Centra v. Chandler Ins. Co.,* 2000 U.S. App. LEXIS 22609 at *30 (10th Cir. Sept. 7, 2000) (Where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone which has a right of recovery, even though in an economic sense, harm may well be sustained by others.)  Similarly, partnerships and limited liability companies must sue and be sued in their own name.  54 O.S. §1-307 and 18 O.S. §2003(1).  Banks and trust companies organized under Oklahoma law have the power to sue in their corporate name.  6 O.S. §402(3).

Exhibit A lists the following individuals who purport to sue on behalf of various types of business entities:

- Richard Adams For Flint Rock Products

- Richard Adams For Oklahoma Flint L L P

- Richard Adams For RK Flint LLC

- Ferrell Alsbury For Alsbury Auto

- Ferrell Alsbury For F L A Incorporated

- H C Baughman President For First State Bank Of Picher

- Larry Bingham President For Bingham Sand and Gravel

12

- Harold Cawyer For Picher Youth Soccer Assoc Inc

- Charles Ernest Clevenger Pastor For Tri-state Faith Center Inc

- Gloria Garner-Workman Secretary For Picher Mining Field Reunion Committee Inc

- Wayne Grimes For Leigh Manor

- Wayne Grimes For Picher-cardin Girls Softball

- Tim Reeves Secretary Treasurer For Picher Firefighters Assn Inc

- Deloris A Timms Secretary Treasurer For First Freewill Baptist Church Inc

The court finds the Third Amended Complaint is deficient in that it fails either to name as plaintiffs the corporations or business entities listed above or allege facts establishing the individuals' standing to sue on behalf of those business entities.

### 2.  Plaintiffs asserting claims for injuries to property owned by deceased persons

Under Oklahoma law, a decedent's tort claims may only be advanced by a legally appointed representative of the decedent's estate.  *See Swearingen v. Bank of Oklahoma,* 134 P.3d 922, 925 (Okla. Civ. App. 2006); 12 O.S. §2025.  Exhibit A lists the following individuals who assert claims for injuries to property of deceased persons:

- Lou Ann Barrett Deceased By Richard Barrett

- Wiley Armstrong Deceased By Wanda Armstrong

- Pearl Hile Deceased By Louis Hile

- Lorena A Laremoare Deceased By Lorena A Brown

- Linda Mathis Deceased By Danny Mathis

- Arthur D Meador Deceased By Steven D Meador

- Clarence Newman Deceased By Judith G Newman

- Bob Nicholson Deceased By Christopher M Church

- Cleo A Red Deceased By Juanita Louise Red

- James Reeves Deceased By Marjorie Reeves

- Ernest E Starling Deceased By Peggy Ann Starling

- Alonza Suman Deceased By Debra Bunce

- Deloris Suman Deceased By Debra Bunce

- Bob Wood Deceased By Lola Wood

- Bob Berry Deceased By (Rep Unknown)

- Sam Bunce Deceased By (Rep Unknown)

- Mary Inman Deceased By (Rep Unknown)

- Charlie Jones Deceased By (Rep Unknown)

The Third Amended Complaint is deficient to the extent it fails to set forth facts establishing these plaintiffs are personal representatives of the estates of the deceased individuals.

### 3.  Individuals suing on behalf of unincorporated associations, churches and religious societies

Under Oklahoma law, members of an unincorporated association may maintain a lawsuit if it appears that the representative will fairly and adequately protect the interests of the association and its members.  12 O.S. §2023.2.  An unincorporated church or religious society of three or more people may organize and become capable of suing in its own name by signing articles with certain information about the church and its qualifications of membership.  18 O.S. §562.  Exhibit A lists the following individuals who purport to assert claims for injury to property owned by unincorporated associations, churches or religious societies:

14

- Ernie Redden Director For Freedom From Addiction Through Christ

- Louis Hile For IOOF Lodge #596

- Lloyd R Stone For Eagle's Nest Fellowship

- Robert A Cody For Bethel Freewill Baptist Church

- Billie J Crawford For First Baptist Church Of Cardin

- Casey Hollingworth Pastor For Church Of Nazarene

The Third Amended Complaint is deficient in failing to identify the nature of these organizations and allege facts establishing the standing of the individuals who purport to act on behalf of the organizations.

### 4.  Individuals suing on behalf of a county, municipality, school district or public authorities

"Organized counties" may sue in their own name.  19 O.S. §1(1).  Counties shall sue as "Board of County Commissioners of the County of _____."  19 O.S. §4.  Exhibit A lists "Russell Earls Chairman County Commissioners For Ottawa County" as a plaintiff in this case.  [Doc. No. 296-2, Ex. A, p. 27].  This does not comport with Oklahoma law.

Similarly, incorporated municipalities and school districts have the power to sue in their own name.  11 O.S. §22-101(1).  *See also, Cole,* 2009 U.S. Dist. LEXIS 28177 at *27.   School districts have the power to sue and should do so as "Independent School District No. ___ of _____ County, Oklahoma.  *See Independent School Dist. No. 9 of Tulsa County v. Glass,* 639 P.2d 1233, 1237-38 (Okla. 1982).  Here, Exhibit A lists "E A Freeman For City / Town Of Picher" and "Herman C McMullan Mayor For City / Town Of Cardin."  This is improper.  Exhibit A also improperly lists  "Don Barr Superintendent For Picher-Cardin School District."  The city and school district themselves, rather than individual members of their governing

15

bodies, must assert their property claims. *Cole,* 2009 U.S. Dist. LEXIS 28177 at *27 (citing *Randolph v. Cantrell,* 707 P.2d 48, 51 (Okla. Civ. App. 1985)).

Exhibit A also lists as plaintiffs the following individuals who purport to sue on behalf of various development, public works, utility and housing authorities:

- E A Freeman For Picher Development Authority

- E A Freeman For Picher Development Co

- E A Freeman For Picher Public Works Authority

- Herman C McMullan For Cardin Special Utility Authority

- Tim Reeves Secretary Treasurer For Picher Volunteer Fire Dept And/or City Of Picher

- John G Sparkman For Housing Authority Of Picher

The Third Amended Complaint fails to allege any facts establishing these individuals' standing to sue on behalf of the entities named.

### 5.  Individuals suing on behalf of other persons for unknown reasons

Exhibit A lists "John C Carter on behalf of Katherine M Herd" and "Goldie Lillian Johnson By Garland L Horn" as plaintiffs. However, it contains no factual allegations establishing what, if any, standing John C. Carter has to pursue a claim on behalf of Katherine M. Herd, or what, if any, standing Garland L. Horn has to pursue a claim on behalf of Goldie Lillian Johnson.[9]

---

[9]The same is true for the plaintiff identified as "Jimmie Koronis By Jeffrey Don Dial," which was not identified in defendants' Motion to Dismiss.  Similarly, Exhibit A lists "L Lester Coppedge For Coppedge Family Trust" as a plaintiff, without alleging facts establishing the individual's standing to pursue a claim for the trust. In addition, the plaintiff identified in Exhibit A as "Deborah L Garrett Trust By (Rep Unknown)" is without sufficient supporting factual allegations.

### III.  Conclusion

For the reasons set forth above, defendants' Motion to Dismiss [Doc. No. 300] is granted in part and denied in part.  Plaintiffs' claims for private and public nuisance are dismissed to the extent they seek damages for injury to properties occurring before May 14, 2001. Additionally, plaintiffs are granted leave to file an amended complaint on or before March 10, 2010, which either sets forth facts sufficient to establish the standing and capacity of the following individuals to sue, or alternatively substitutes real parties in interest to the claims asserted by these plaintiffs: Richard Adams For Flint Rock Products; Richard Adams For Oklahoma Flint L L P; Richard; Adams For RK Flint LLC; Ferrell Alsbury For Alsbury Auto; Ferrell Alsbury For F L A Incorporated; H C Baughman President For First State Bank Of Picher; Larry Bingham President For Bingham Sand and Gravel; Harold Cawyer For Picher Youth Soccer Assoc Inc; Charles Ernest Clevenger Pastor For Tri-state Faith Center Inc; Gloria Garner-Workman Secretary For; Picher Mining Field Reunion Committee Inc; Wayne Grimes For Leigh Manor; Wayne Grimes For Picher-cardin Girls Softball; Tim Reeves Secretary Treasurer For Picher Firefighters Assn Inc; Deloris A Timms Secretary Treasurer For First Freewill Baptist Church Inc; Wiley Armstrong Deceased By Wanda Armstrong; Pearl Hile Deceased By Louis Hile; Lorena A Laremoare Deceased By Lorena A Brown; Linda Mathis Deceased By Danny Mathis; Arthur D Meador Deceased By Steven D Meador; Clarence Newman Deceased By Judith G Newman; Bob Nicholson Deceased By Christopher M Church; Cleo A Red Deceased By Juanita Louise Red; James Reeves Deceased By Marjorie Reeves; Ernest E Starling Deceased By Peggy Ann Starling; Alonza Suman Deceased By Debra Bunce; Deloris Suman Deceased By Debra Bunce; Bob Wood Deceased By Lola Wood; Bob Berry Deceased By (Rep Unknown); Sam Bunce Deceased By (Rep Unknown); Mary Inman Deceased By (Rep Unknown); Charlie Jones

17

Deceased By (Rep Unknown); Ernie Redden Director For Freedom From Addiction Through Christ; Louis Hile For IOOF Lodge #596; Lloyd R Stone For Eagle's Nest Fellowship; Robert A Cody For Bethel Freewill Baptist Church; Billie J Crawford For First Baptist Church Of Cardin; Casey Hollingworth Pastor For Church Of Nazarene; Don Barr Superintendent For Picher-Cardin School District; Russell Earls Chairman County Commissioners For Ottawa County; E A Freeman For City / Town Of Picher; E A Freeman For Picher Development Authority; E A Freeman For Picher Development Co; E A Freeman For Picher Public Works Authority; Herman C McMullan For Cardin Special Utility Authority; Herman C McMullan Mayor For City / Town Of Cardin; Tim Reeves Secretary Treasurer For Picher Volunteer Fire Dept And/or City Of Picher; John G Sparkman For Housing Authority Of Picher; John C Carter on behalf of Katherine M Herd; Goldie Lillian Johnson By Garland L Horn; Jimmie Koronis By Jeffrey Don Dial; L Lester Coppedge For Coppedge Family Trust; Deborah L Garrett Trust By (Rep Unknown).

After March 10, 2010, the court will dismiss the claims of any of the above-listed plaintiffs who do not comply with this order.

ENTERED this 24th day of February, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

18